# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **GARY SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 4:13CV965 HEA |
| | ) |
| **UNITED PARCEL SERVICE,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>AMENDED OPINION, MEMORANDUM AND ORDER</u>   *

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 53]. Plaintiff opposes the motion. For the reasons set forth below, the Motion is granted.

## Facts and Background

Plaintiff brought this action for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e. Plaintiff alleges discrimination based on his race (African American) and gender (male), and retaliation and harassment.

In his charge of discrimination, Plaintiff challenges his termination from his employment with Defendant and alleges race discrimination and retaliation.

---

* Opinion, Memorandum and Order amended as to the document date only to reflect the date that the Opinion, Memorandum and Order was filed.

Plaintiff's employment with Defendant was terminated because, according to Defendant, Plaintiff failed to assure Defendant that he would abide by Defendant's policy of refraining from cursing in the work place. The facts leading up to this decision are set out below.

Plaintiff was a supervisor for Defendant. In a discussion with Mike Houlihan, another supervisor, Plaintiff said "HOLD ON MOTHER F***. I ASKED YOUR B*** A** NOT TO TALK TO ME LIKE THAT, BUT SINCE YOU WANT TO DO IT, THEN LET'S DO IT. STAY YOU'RE A** OVER ON THE PD 3, 4 AND 5. YOU HAD THE SORT AISLE AND DIDN'T DO S*** WITH IT."  Hub Division manager Tony Taylor learned of the incident and spoke separately with Plaintiff and Houlihan.   By the conclusion of Plaintiff's meeting with Taylor, Plaintiff understood that Taylor was telling him that "just because somebody does something inappropriate to you, [it] does not justify you doing something inappropriate back."   During Taylor's meeting with Houlihan, Houlihan admitted making a comment about "power trip bulls***" but denied any of the other comments attributed to him.   Houlihan agreed to conduct himself appropriately in the future.

On August 25, 2012 Plaintiff suspected that West, Houlihan or supervisor John Brozovich had taken his keys. Plaintiff accused West of taking his keys. West said "I don't know where your keys are."

Plaintiff testified that in the early morning of August 25, 2012, that Mr. West asked supervisors to come to a certain area, away from Mr. Smith's office. Mr. West gave Mr. Smith two packages to take to the other side of the building. When he came back, his keys were missing. After Mr. Smith reported his keys missing, Mr. West testified that he did not search for Mr. Smith's keys. Mr. West called no fewer than 6 people at UPS after his conversation with Mr. Smith.

Mr. Henderson did a search for Gary's keys for 20 minutes and didn't find them. He believed that if the keys had been in the desk, he would have found them. A police officer also searched and could not find the keys in Mr. Smith's office.

A few days after the keys went missing, Mr. Henderson helped prepare 4 questions on a document UPS labeled "Security Statement Questions for 8/24/12 which asked supervisory employees if they had ever had their keys taken at work or lost their keys, or whether they knew if anyone had ever taking some else's keys as a joke. Mr. Henderson stated there were no other times when a similar questionnaire was circulated when someone lost an item.

The keys turned up in the exact location which was searched 6 months later and Defendant had employees then sign a memo in March of 2013 which said:

> In regards to Gary Smith and his missing keys, this investigation is ongoing. You are not to talk about it with anyone other than HR Manager Eric Henderson, Security Manager Patricia Smith, or District HR Manager Stan Roux. Discussing this investigation with anyone outside of these three will

constitute a violation of confidentiality with respect to this investigation and disciplinary action up to and including termination may result.

Mr. Roux testified that it was not standard practice to distribute a memo of this sort. Mr. Roux testified the fact the keys turned up later "made no sense."

Plaintiff called Mr. West that morning about the missing keys. Plaintiff was very upset because he was now missing his house keys and car keys. His wife and children were at home and he worried for their safety. When he called Mr. West at home about the missing keys, Mr. West snickered. Plaintiff testified he had also had food stolen while at UPS.

According to Plaintiff's own write up, Plaintiff said to West, his manager "Whatever! If you mother f*** want to go there, let's go there. Don't be acting like some little b*** and doing it behind my back. Don't bring my f*** family into this." Plaintiff then hung up on West.

A few days after the incident, Plaintiff was asked to meet with Roux and Taylor in Roux's office. Roux is the top human resources official in the District and is responsible for over 15,000 employees. After Plaintiff explained what happened, Roux suggested that he had threatened his supervisor. According to Plaintiff's summary of the conversation, "I refuted this statement and stated that I had not threatened anyone." Roux suggested that Plaintiff was insubordinate. Plaintiff told Roux "I did no such thing."

Roux met again with Plaintiff on September 5, 2012. Plaintiff asked for a transfer and Roux indicated that he wanted Plaintiff "to stay in the hub and learn how to deal with conflict management." Plaintiff told Roux that he "knew how to deal with conflict management." Roux suggested that Plaintiff change his attitude. Plaintiff told Roux he did not have an attitude problem. Plaintiff said "I'm sorry sir, but how can you tell me to change my attitude? Sir, we don't know each other." Roux again told Plaintiff he needed to change his attitude. Plaintiff said "Tell me how sir."

Roux asked "So is it safe to say that if you use profanity again, that will be your last day here at UPS?" Plaintiff said "I cannot agree with that because it's against that law for you to hold me to a different standard than everyone else."

Trevor West testified that workers at the Earth City facility often have to raise their voices: "There's a lot of moving parts going on, machinery, so you have to raise your voice at almost all times, unless you're in very close quarters."

Mr. Roux testified that he was not aware of anyone being fired for cursing in the workplace. Trevor West was asked in deposition about employees cursing and exhibiting aggressive behavior at the facility. He stated that cursing occurs every day at the facility. West admitted to using profanity himself in the workplace.

Eric Henderson has heard other employees curse on the job and it happens daily. Mr. Henderson testified that no one at the Earth City facility had been

terminated for cursing on the job. Mr. Henderson said he knew of no other employee terminated for same reasons as Plaintiff.

Roux felt that Plaintiff left UPS with no alternative but to terminate Plaintiff's employment. Roux and Taylor agreed on this point. On September 14, 2012, Roux and Taylor met with Plaintiff and Taylor terminated Plaintiff's employment.

Following Plaintiff's discharge, Area Human Resources Manager Eric Henderson met with each management employee in the Earth City, Night Sort. During these meetings, each management employee reviewed UPS' Professional Conduct and Anti-Harassment Policy and UPS' Crisis Management and Workplace Violence Prevention Policy. Each employee signed a copy of each policy so that it would be clear that each employee understood UPS' policies and what was expected. Each employee committed to following the policy.

Plaintiff had also received a copy of UPS' Professional Conduct and Anti-Harassment Policy at the outset of his employment and acknowledged receipt.

On April 25, 2013, Plaintiff filed a charge of discrimination with the EEOC. In his charge, Plaintiff complained only about his discharge and alleged that his discharge was discriminatory and/or retaliatory.

Roux and Taylor, the two individuals involved in the decision to discharge Plaintiff, were unaware of Plaintiff ever complaining to Patricia Smith about conduct that would possibly violate Title VII.

## Legal Standards

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The court must not weigh evidence or make credibility determinations; the moving party bears the burden of showing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The Court must view the record "in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011).

When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the laurels of its allegations in his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed.R.Civ.P. 56. "To establish a genuine issue of material fact, [a plaintiff] may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that

would permit a finding in her favor." *Fatemi v. White*, 2015 WL 64308 at *16 (8th Cir. Jan. 6, 2015) (citation omitted).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (citation omitted). Although employment discrimination cases often rely on inferences, "summary judgment is not disfavored and is designed for every action.... There is no discrimination case exception to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011)(en banc) (citation omitted). The question, therefore, becomes is the case legally meritoriously worthy of trial?

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer' to 'discriminate against any individual with respect to' the 'terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vance v. Ball State Univ.*, ___U.S.___, 133 S.Ct 2434, 2440 (2013)(quoting 42 U.S.C. § 2000e-2(a)(1).

Title VII requires that before a plaintiff can bring a suit in court claiming unlawful discrimination or retaliation, he must file a timely charge with the EEOC or the appropriate state or local agency. 42 U.S.C. § 200e-5(1); *Nat'l R.R. Passenger*

*Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002). "In Missouri, this obligation must be discharged within 300 days of the [adverse employment action]." *Brooks v. Midwest Heart Group*, 655 F.3d 796, 800 (8th Cir. 2011).

If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant, who must rebut the presumption of discrimination with evidence of a legitimate, non-retaliatory reason for the challenged action. *Fatemi*, 2015 WL 64308, at * 16. "The employer's responsibility to present proof of a nondiscriminatory, legitimate justification for its action is not an onerous task." *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014). Even if the employer meets that burden, the employee may still prevail by proffering evidence that the employer's reason was a pretext for discrimination. *Id.*

"Proof of pretext requires more substantial evidence than a *prima facie* case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." *Gibson v. Geithner*, 2015 WL 134941 at *4 (8th Cir. Jan. 9, 2015. "There are at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Id.* A plaintiff may show pretext, by, among other ways,

"showing that an employer (1) failed to follow its own policies; (2) treated similarly-situated employees in a disparate manner; or (3) shifted its explanation of the employment decision." *Lake v. Yellow Trans, Inc.* 596 F.3d 871, 874 (8th Cir. 2010).

Plaintiff filed a Charge of Discrimination on September 14, 2012. In this charge, Plaintiff stated that he believed he had been discriminated against based on his race and in retaliation for participation in protected activity. Nowhere in the charge does Plaintiff even hint at his current allegations of gender discrimination or harassment. Plaintiff has presented no evidence upon which he could withstand Defendant's motion regarding gender and harassment discrimination claims. Summary judgment is therefore warranted on these claims.

With respect to Plaintiff's claim of racial discrimination, the Court concludes that Plaintiff cannot satisfy the elements necessary to survive the summary judgment challenge on that front. To prevail on a claim of discrimination based on race, Plaintiff must show that (1) he is a member of a protected class, (2) he was meeting his employer's expectations, (3) he suffered an adverse employment action and (4) he was treated differently than similarly situated employees were not members of his protected class. *Jackman v. Fifth Judicial Dist.,* 728 F.3d 800, 804 (8th Cir.2013). Defendant concedes the first three elements for the purposes of this motion. The remaining issue, therefore is whether Plaintiff was treated differently than

similarly-situated employees   Plaintiff has failed to provide evidence of a similarly-situated non-African-American employees who refused to follow Defendant's requirement that he refrain from using profanity in the future. Although Plaintiff attempts to establish this evidence through his own statements, nothing in the record substantiates his claims.   Plaintiff presents some evidence of actions taken or not taken with regard to other employees,   however, these employees were not similarly situated with Plaintiff.   In order to survive the challenge, Plaintiff is required to present evidence that other non-African-American employees engaged in using profanity *and* refused to take the corrective measure of refraining from the activity in the future.   Any evidence of such employees is glaringly absent, and therefore, Plaintiff cannot make satisfy the elements of a *prima facie* showing of racial discrimination.

Moreover, Defendant has offered a legitimate, nondiscriminatory basis for Plaintiff's discharge.   Plaintiff was given the opportunity to return to his job and deal with conflict in a more productive manner.   Plaintiff refused to acknowledge that his actions were not acceptable to Defendant or agree to change his behavior. Plaintiff has presented no evidence to establish that this given reason for his termination was pretextual.

Plaintiff failed to demonstrate a triable issue of fact which would establish Defendant's stated reason for his termination was a pretext.   *See Muor v. U.S. Bank*

*Nat'l Ass'n*, 716 F.3d 1072, 1077-78 (8th Cir. 2013) ("In light of the lack of evidence showing that discriminatory animus motivated the adverse employment decision" and the defendant's well-documented legitimate reason for the adverse employment action, the plaintiff had not established a material issue of fact concerning pretext and summary judgment on the plaintiff's Title VII claim was proper).

Title VII prohibits employers from retaliating against employees for opposing racial discrimination. 42 U.S.C. § 2000e-3(a). Because Plaintiff lacks direct evidence of retaliation, the burden-shifting analysis of *McDonnell Douglas* applies. *See Musolf v. J.C. Penney Co*, 773 F.3d 916, 918 (8th Cir. 2014. In such a case, "to survive a motion for summary judgment, [a plaintiff] must show a prima facie case of retaliation and must show the proffered legitimate non-retaliatory reasons for his termination were pretextual." *Gibson*, 2015 WL 134941 at *3. Plaintiff must first establish a *prima facie* case by showing that (1) he engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *Id.*

The Supreme Court recently held that unlike other Title VII claims, a plaintiff alleging retaliation "must [prove the claims] according to traditional principles of but-for causation, not the lessened [motivating factor] causation test...." *Univ. of Tex. Sw. Med Ctr. V. Nassar*, __ U.S. __, 133 S.Ct 2517. 2533 (2013). Courts

assign varying weight to the temporal proximity between the complaint of discrimination and the adverse action. "Proximity alone can be enough to establish causation for a prima facie case. However, proximity alone is insufficient to establish pretext." *Gibson 2015 WL 134941 at \*5* (citations omitted). Rather, a court must "evaluate the timing of the discharge in light of other evidence, or lack of other evidence, in the record." *Id.* (citation omitted).

Here, assuming Plaintiff met his burden of establishing a *prima facie* case of retaliation, the record before the Court is devoid of any evidence that would support a finding of pretext. Plaintiff claims he complained about West to a member of Defendant's Security Department in April or May, 2011. There is clearly no temporal proximity between the complaint of discrimination and the adverse employment action. Likewise, Plaintiff cannot establish that the individuals involved in the decision to terminate Plaintiff's employment were even aware of his alleged complaints. Insubordination and violation of company policy are legitimate reasons for termination, and in assessing a claim of retaliation courts may not second-guess employers' business decisions for terminating an employee. *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014). Plaintiff has not presented evidence of similarly-situated white employees who were not fired, that the decision to fire Plaintiff was in contravention of Defendant's policies, or that Defendant shifted its explanation of the termination decision. Nor can the Court say

that, under the circumstances here, Defendant's explanation—the insubordination exhibited by Plaintiff in refusing to conform his behavior—is "unworthy of credence." Plaintiff has failed to show that a material question of fact remains as to pretext, and Defendant is entitled to summary judgment on this claim. *See Gibson,* 2015 WL 134941 at 5.

## Conclusion

Based upon the forgoing analysis, the Court concludes that no genuine dispute as to any material fact exists and therefore, Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No 53], is granted.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 2nd day of February, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE